# IN THE COURT OF APPEALS OF IOWA

No. 19-0234
Filed August 7, 2019

IN THE MATTER OF K.T.,
Alleged to be Seriously Mentally Impaired,

K.T.,
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Robert B. Hanson,

Judge.


        K.T. appeals a district court order finding her seriously mentally impaired.

**AFFIRMED.**


        Alexander Smith of Parrish Kruidenier Dunn Boles Gribble Gentry Brown &

Bergmann L.L.P., Des Moines, for appellant.

        Thomas J. Miller, Attorney General, and Gretchen Kraemer, Assistant

Attorney General, for appellee State.


        Considered by Potterfield, P.J., and Bower and Greer, JJ.

**GREER, Judge.**

K.T. challenges the district court's finding of serious mental impairment and claims there is insufficient evidence that she is unable to make responsible decisions with respect to her care, hospitalization, or treatment. On our review, we affirm.

## I.  Background Facts and Proceedings.

On January 9, 2019, while K.T. was hospitalized, a psychiatric nurse practitioner and a hospital social worker filed commitment paperwork. The nurse practitioner noted K.T. has had a long hospitalization and he does not believe she can care for herself. The nurse practitioner explained,

> Since being hospitalized, [K.T.] has had difficulties with disruptive behaviors. She has delusional and paranoid thoughts. She has attempted to elope from the unit several times. She has refused to take any medications that have been offered to her to help and control her behaviors and to help with her psychotic symptoms.

On January 14, after a hearing, a magistrate found K.T. was "very aggressive towards others," could not take care of herself, had no insight into her illness or need for treatment, and did not take prescribed medications. The magistrate ordered that K.T. be committed for inpatient treatment. K.T. timely appealed this ruling to the district court.

On February 6, K.T.'s treating physician submitted a report to the court. The physician opined K.T. is mentally ill and experiencing "Major Neurocognitive Disorder with significant cognitive deficits in multiple spheres including memory and executive functioning." The report noted K.T. has poor insight into her illness and need for treatment. The report continued,

[K.T. i]s not safe in her home setting and has been admitted multiple times in the past year for treatment of fractured bones, infections, acute mental status changes, and stroke. She is intermittently not cooperative with cares for diabetes and hypertension. Has left skilled nursing facilities prior to being stabilized.

On February 7, the district court held a trial de novo. The court heard testimony and received reports from K.T.'s treating physician. At the conclusion of the trial, the court found that K.T. has a mental illness, lacks sufficient judgment to make responsible decisions with regard to her hospitalization or treatment, and, as a result, K.T. was likely to physically injure herself or others if allowed to remain at liberty without treatment and was incapable of satisfying her needs for medical care. The district court ordered commitment. K.T. appeals.

## II. Standard of Review.

"We review challenges to the sufficiency of the evidence in involuntary commitment proceedings for errors at law." *In re B.B.*, 826 N.W.2d 425, 428 (Iowa 2013). An applicant must prove the elements of serious mental impairment by clear and convincing evidence. *Id.* "Clear and convincing evidence is less burdensome than evidence establishing proof beyond a reasonable doubt, but more burdensome than a preponderance of the evidence." *Id.* Clear and convincing evidence "means that there must be no serious or substantial doubt about the correctness of a particular conclusion drawn from the evidence." *Id.* (quoting *In re J.P.*, 574 N.W.2d 340, 342 (Iowa 1998)).

"[T]he district court's findings of fact are binding on us if supported by substantial evidence." *J.P.*, 574 N.W.2d at 342. "Evidence is substantial if a

reasonable trier of fact could conclude the findings were established by clear and convincing evidence." *In re B.T.G.*, 784 N.W.2d 792, 796 (Iowa Ct. App. 2010).

### III. Analysis.

To establish that an individual is seriously mentally impaired,

> The respondent must be found to have (1) a mental illness, consequently (2) to lack "sufficient judgment to make responsible decisions with respect to the person's hospitalization or treatment" and (3) to be likely, if allowed to remain at liberty, to inflict physical injury on "the person's self or others," to inflict serious emotional injury on a designated class of persons, or be unable to satisfy the person's physical needs.

*J.P.,* 574 N.W.2d at 343 (quoting Iowa Code § 229.1(14) (1997)); *see also* Iowa Code § 229.1(20) (2019) (defining "Seriously mentally impaired").

On appeal, K.T. challenges the district court's ruling only with regard to the second element: whether she lacked sufficient judgment to make responsible decisions with respect to her hospitalization or treatment. "This element 'requires the State to prove that the person is unable, because of the alleged mental illness, to make a rational decision about treatment, whether the decision is to seek treatment or not.'" *In re N.L.*, No. 16–0094, 2016 WL 3271884, at *1 (Iowa Ct. App. June 15, 2016) (quoting *In re Mohr*, 383 N.W.2d 539, 541 (Iowa 1986)). "In determining whether the person can make a rational decision, 'the focus must be on whether the grounds for the decision are rational or reasonable not what conclusion is reached.'" *Id.* (quoting *J.P.*, 574 N.W.2d at 343). "A decision, although medically inadvisable, may be rationally reached, and if so, it is not the court's place to second guess the decision." *J.P.,* 574 N.W.2d at 343.

K.T. wants to return to her home against the advice of her physicians because her son is available to care for her in that setting. K.T. argues that it is

common for patients to want to return home rather than stay in a hospital or other facility. For that reason, K.T. argues her desire to return home and have her son care for her is rational and reasonable, even if it was against the advice of her physicians. Therefore, she argues, she does not lack sufficient judgment to make responsible decisions regarding her hospitalization or treatment. K.T.'s son did not testify.

At trial, K.T.'s treating physician, board certified in adult psychiatry, testified that prior to the beginning of these commitment proceedings, while K.T. was living at home with her son, she was admitted to the hospital multiple times due to urinary tract infections and injuries from frequent falls. The physician also opined that K.T. lacked insight into her illness and was noncompliant with medications. That noncompliance impeded her ability to medically slow the progression of her cognitive deterioration from the neurocognitive disorder. After already suffering a stroke and being diagnosed as having vascular dementia, K.T. refused to take antihypertensives, which put her at further risk for strokes. The physician noted that following one hospitalization, K.T. received in-home nursing care until the care team refused to continue providing treatment in the home, believing the in-home setting was not appropriate for K.T.'s needs.

The district court based its finding that K.T. lacked sufficient judgment to make responsible decisions about her hospitalization or treatment on the following:

> a) by her lack of insight into her mental illness and the coordinate need for treatment of that mental illness which prevents her from adequately assessing the potential benefit of same, b) her refusal to take her psychiatric medications, c) her intermittent failure to cooperate with treatment regarding her other health conditions, namely, diabetes and hypertension, and d) her history of leaving skilled nursing facilities prior to reaching stabilization.

The district court concluded that K.T. was incapable of satisfying her needs for essential medical care based on:

> i) her intermittent failure to cooperate with care for her diabetes and hypertension conditions as well as her refusal to take her psychiatric medications, and ii) her history of frequent falls, infections, acute mental status changes, strokes, and chronic pain while residing at home.

Although it may be understandable for a patient to want to return home, based on the evidence presented in this case, K.T.'s desire to return home was not rational or reasonable. We conclude substantial evidence supported the district court's finding that K.T. was seriously mentally impaired and there is no error of law with regard to the district court's conclusion that K.T. lacked sufficient judgment to make responsible decisions regarding her needs for essential medical care, hospitalization, or treatment.

## IV. Disposition.

For the foregoing reasons we affirm the district court's commitment order.

**AFFIRMED.**